GEORGE H. MOST et al., Appellees, v. SARAH G. NORTON et al.,
Appellants.

CONTRACTS: Rescission and Cancellation—Fraudulent Representa-
tions.   Evidence reviewed, in an action to rescind contract for
exchange of land on the ground of fraudulent representations,
and held sufficient for the cancellation and setting aside of the
contract.

*Appeal from Cass District Court.*—J. B. ROCKAFELLOW,
Judge.

JULY 7, 1919.

SUIT in equity to rescind a written contract for an ex-

change of real estate. There was a cross-petition by defendant, praying specific performance of the contract. A trial resulted in the dismissal of the cross-petition, and a decree for plaintiff as prayed. Defendant appeals.—*Affirmed.*

*H. M. Boorman* and *O. M. Slaymaker,* for appellants.

*Swan & Swan* and *B. A. Goodspeed,* for appellees.

STEVENS, J.—By the terms of a written contract, entered into between plaintiffs, George H. Most and wife, who resided near Atlantic, Cass County, Iowa, and defendants, who resided near Anita in the same county, executed on December 6, 1915, plaintiffs agreed to convey to the defendant Sarah G. Norton a 40-acre tract of land, located in Cass County, Iowa, incumbered by mortgages aggregating approximately $5,700, together with another tract of 191 acres, situated in Sully County, South Dakota, incumbered by a mortgage for $650, in exchange for a tract of 141 acres situated in Clarke County, Iowa, and incumbered for $10,-000, and an 80-acre tract situated in Scotts Bluff County, Nebraska, on which plaintiffs agreed to assume a mortgage for $1,000, due March 1, 1918, at 7 per cent. On December 9th, deeds were executed by the respective parties, as required by the contract, and deposited with the defendant L. W. Niles, cashier of the Atlantic National Bank, to be held by him until January 1, 1916, when they were to be delivered to the parties entitled thereto. The contract further required the defendant Sarah G. Norton, on delivery of the deed conveying the Cass County and Dakota land to her, to pay plaintiffs $1,000 in cash. Possession of all land was to be given March 1, 1916.

Plaintiffs allege in their petition that they were induced to sign the contract by false and fraudulent representations made to them by Sarah G. Norton, as to the character and value of the Nebraska and the Clarke County

land. The representations alleged are, in substance, as follows: That the Nebraska land was located about five miles from the town of Mitchell; that there was a government irrigation ditch near, and that same could be irrigated; that it had yielded from $200 to $300 worth of hay the preceding year; that it was fenced on one side, and worth in the market $45 per acre, and that she had paid $75 per acre for it in trade; that she was familiar with the land, knew its location, susceptibility to irrigation and cultivation, and its value; that defendant further represented that the Clarke County land was situated near Osceola; that same was improved with a good farm house, with a good cellar; that the farm was worth, and she had recently paid her brother therefor, $160 per acre cash; that same was leased for $6.50 per acre; that there were 20 acres of winter wheat on said land; that, when plaintiff went with her, she did not show him the correct boundaries to the land, and did not give him opportunity to make a thorough inspection thereof; whereas, in truth and in fact, the Nebraska land was 21 miles from the town of Mitchell, was not fenced, had not yielded a crop of hay the preceding year, was worth only from $5.00 to $7.00 per acre, was not near a government irrigation ditch, and, on account of its elevation, could not be irrigated; that the house on the Clarke County land, which plaintiff was prevented from seeing on the inside, when he inspected the farm, was in bad condition; that the cellar was worthless; that the land did not rent for more than $3.50 per acre, and was not worth to exceed $60 to $75 per acre; that she had not paid her brother $160 cash per acre therefor, but had traded a stock of goods worth less than $2,000 for an equity therein. Other allegations of fraud contained in the petition will be referred to a little later.

As is usual in cases of this character, the evidence as to the alleged fraudulent representations and the value of the

respective tracts is conflicting. Plaintiff is a farmer, re-
siding on the 40-acre tract described in the contract, near
Atlantic, Iowa, and purchased the Dakota land of a local
business man, without prior inspection, paying $9,000 there-
for. Defendant Sarah G. Norton, with whom all of the
transactions were had, was represented in Atlantic by C. M.
Baxter, a real estate man, who testified that he was also
the agent of plaintiffs.

Negotiations for a trade were begun by the parties in
the latter part of November, 1915; and shortly thereafter,
plaintiff George H. Most, accompanied by Baxter, went to
Osceola, via Des Moines, to inspect the land, and were met
upon arrival at Osceola by Mrs. Norton. The parties at-
tended a revival meeting together during the evening, and
Baxter and plaintiff occupied the same room at a hotel in
Osceola, got up about the same time the next morning, and,
immediately after breakfast, went in an automobile with a
liveryman to inspect the 141-acre farm. The inspection,
apparently, was not very thorough. The parties did, how-
ever, see the buildings, and observed generally the char-
acter and location of the farm. They returned to Osceola
in time to catch a west-bound train, at about 10 o'clock
A. M. They went together to Omaha, Nebraska, and looked
at a residence, incumbered for $1,800, which Mrs. Norton
wanted to put in on the trade.

The contract was drawn up and signed by the defend-
ant George H. Most at his home on the evening of Decem-
ber 6th, in the presence of Baxter, Mrs. Norton, and a broth-
er of the latter's. On December 9th, Mrs. Most signed the
contract in the office of a real estate agent at Atlantic, and
on the same occasion, all of the necessary deeds were ex-
ecuted by the respective parties. Plaintiff testified that
Mrs. Norton had previously told him that the Nebraska
land was incumbered for $1,000, but it later developed that
the land was not incumbered, and plaintiff and wife, on

December 23d, were induced to execute a note, secured by mortgage, on the Nebraska land, and payable to W. H. Seager, of Omaha, Nebraska, of whom defendant claimed she was to get the loan, at the time the deeds were executed.

Notwithstanding her denial, and the testimony of other witnesses who were present when conversations were had between her and the plaintiffs, the evidence quite satisfactorily shows that Mrs. Norton was claiming to others that she paid $160 per acre cash for the land, and this fact tends to corroborate plaintiff's testimony that she so stated and represented to him. It also appears without conflict that the land was conveyed to her in exchange for a small stock of merchandise, which was purchased and traded by her and her brother, without invoicing. Plaintiff testified that defendant informed him that the Clarke County land was leased for $6.50 per acre, and that there were 20 acres of winter wheat thereon. This is denied by her, and the evidence shows that, if the representation was made, it was not true. She also denied all of the material allegations of plaintiff's petition relative to the Nebraska land, and testified that she informed plaintiff that she had never seen it, and obtained her information concerning the same from others. Plaintiff, however, testified that she did, in fact, make all of the representations charged.

One witness called by defendant testified that the Nebraska land was worth $45 per acre; on the other hand, several witnesses called by plaintiff, some of whom resided at Scotts Bluff, near the land in question, testified that it was worth from $5 to $12 per acre. Defendants' witnesses fixed the value of the Dakota land at from $15 to $20 per acre, and plaintiffs', at $30. Defendants' witnesses fixed the value of the Clarke County land at from $100 to $115; whereas plaintiffs' witnesses testified that it was worth from $60 to $90, and one witness said $100 per acre. The evidence of plaintiffs' witnesses as to the value of the Ne-

braska land is more satisfactory than that offered on behalf of the defendant. This land was evidently worth less than $1,000, the amount of the note executed by plaintiff to defendant and secured by mortgage thereon. Estimating the Dakota land at $20 per acre and the Clarke County land at $90 per acre, defendant obtained an advantage in the trade of from $6,000 to $7,000. Practically all of the witnesses agree that plaintiff's Cass County land was worth $250 per acre, and one witness said $275. He was putting it in at $12,000. The methods pursued by Mrs. Norton and her agents do not meet with approval. She, in effect, admitted that she arranged with a real estate agent in Atlantic to pretend and falsely represent to plaintiff that he had another purchaser for the Clarke County land—a man by the name of Fox, residing in the vicinity—at $160 per acre; and the agent referred to testified that she had such an arrangement with him, and that he tried to carry it out. The purpose, evidently, was to induce plaintiff and his wife to execute the deeds on the evening of December 9th. The Clarke County land was not leased for $6.50 per acre, but had a rental value of a little more than one half that sum. The Nebraska land was practically worthless, and did not annually yield a crop of hay, but only when the season was wet, which was infrequent.

At the time of the trial, the Clarke County land was incumbered by a lease for a term expiring March 1, 1917, and it appeared that defendant could not deliver possession of the farm to plaintiff March 1st; but after the submission of the case, and before a decree was entered, defendants filed in the office of the clerk a written relinquishment of the lease, and paid $1,000 to the clerk, which was agreed upon as a part of the consideration for the exchange. It was not shown, however, that possession has been delivered to defendant.

We have refrained from an extensive recitation or re-

view of the evidence, and content ourselves with calling specific attention to the foregoing matters; but the record has been read with care, and we are persuaded therefrom that the greater weight of the credible evidence shows that plaintiffs were induced by the alleged representations of the defendant Sarah G. Norton, and those associated with her, to enter into the contract and execute the deeds conveying the Cass County and Dakota land to her, and also the note and mortgage for $1,000; and that she obtained an unconscionable advantage in the transaction. Plaintiffs acted promptly upon discovering the fraud, and gave defendants notice in writing of their election to rescind the contract. The petition was filed January 15, 1916. We have not overlooked the fact appearing in the record that plaintiffs' testimony is contradicted by several witnesses called by defendants, but there is much to discredit the testimony of some of these witnesses, and the circumstances add corroboration to plaintiffs' claim.

The decree of the trial court canceling and setting aside all of the instruments signed and executed by plaintiffs is fully supported by the record, and meets with our approval, and is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.